UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:15CV-00202-JHM

JASON ALLEN COKER                                                                    PLAINTIFF

V.

UNITED STATES OF AMERICA                                                     DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Defendant, United States of America, for summary judgment pursuant to Fed. R. Civ. P. 56 [DN 53]. Fully briefed, this matter is ripe for decision.

**I. BACKGROUND**

This action arises from the denial of benefits under the Traumatic Servicemembers' Group Life Insurance Program ("TSGLI") by the United States Army Board for Correction of Military Records ("ABCMR" or "Board"). Plaintiff is a former member of the United States Army who suffered a left shoulder injury while serving on active duty after falling from a military vehicle and landing on his outstretched left arm. Plaintiff filed a claim for benefits under the TSGLI on September 6, 2011. The Army denied Plaintiff's claim for benefits on the basis that Plaintiff was unable to provide sufficient medical documentation to support his claim for loss of ability to independently perform two or more activities of daily life ("ADL") for at least 30 consecutive days. After several administrative appeals and a final denial, Plaintiff filed suit against the United States on October 21, 2014. The United States now moves for summary judgment.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U .S. 242, 247–48 (1986).

## III. DISCUSSION

### A. Benefit Application and Appeals

On February 24, 2006, Plaintiff suffered a Grade III acromioclavicular separation injury to his left shoulder when he fell off a moving Humvee in Iraq while on active duty. From February 27, 2006 until March 1, 2006, Plaintiff was treated at Landstuhl Regional Medical Center in Germany. Medical notes indicated that Plaintiff had severe pain in his left shoulder and an inability move his left arm without pain; he had swelling in his shoulder, tenderness on palpation of the AC joint, and abnormal motion of the shoulder. Plaintiff had an x-ray of the shoulder and was diagnosed with the acromioclavicular separation injury.

On March 5, 2006, Plaintiffs was transferred back to Fort Campbell, Kentucky. Plaintiff was treated at Blanchfield Army Community Hospital at Fort Campbell, Kentucky, on an outpatient basis. Plaintiff was first seen in the orthopedic clinic at Blanchfield Army Community Hospital on March 7, 2006. Plaintiff reported moderate shoulder pain. Plaintiff's shoulder range of motion was limited with passive range of motion listed as 90 degrees flexional/abductional.

Plaintiff's orthopedist, Dr. Clark Searle, referred him to physical therapy to work on range of motion and pain control. (AR 291.) On March 13, 2006 (17 days after injury), Plaintiff was first evaluated for physical therapy. During this visit, Plaintiff's pain was 4/10 on the pain scale, and "he was able to lift his [left] arm over his head to remove his shirt." (AR 288.) When doing active range of motion function, Plaintiff had pain with all motion seated but able to get 120 degrees flexion and 90 degrees abduction. (AR 288.)[1] From March 14, 2006 to April 14, 2006 (18-49 days after injury), Plaintiff attended physical therapy two to three times a week. During these visits, Plaintiff reported his pain was 4/10 to 7/10 on the pain scale. Plaintiff conducted exercises such as low rows, pulleys, and NRG ball press outs. On April 5, 2006 (41 days after injury), Plaintiff was "able to cross over and touch other shoulder but if lifts elbow then pain is reproduced." (AR 271.)

On April 16, 2006, Plaintiff was seen in the emergency room, reporting that he had fallen down the stairs. An x-ray showed "no fracture." (AR 255.) On April 18, 2006, Plaintiff was seen in the deployment health clinic indicating an exacerbation of pain to his left thoracic chest following a cough. Physician assistant noted that his rib pain is separate from his shoulder pain. (AR 253.) On April 20, 2006, Plaintiff saw Dr. Searle who noted that Plaintiff had fallen down stairs six days ago and broke a rib and aggravated his shoulder. (AR 244.) Between April 20, 2006 and May 20, 2006, Plaintiff continued physical therapy. During this period, Plaintiff rated his pain as between 0/10 to 6/10 on the pain scale. On May 18, 2006, Plaintiff was seen in the orthopedic clinic. Plaintiff had an active range of motion of 0 to 90 degrees flexional and abductional, passive range of motion of 0 to 140 degrees flexional and abductional, and 70

---

[1] Flexional or flexion is movement is the bending of a joint so as to bring together the parts is connects. Abductional or abduction descries movement that is away from the midline of the body.

degrees external rotation. Dr. Kurtis Kowalski indicated that Plaintiff might benefit from a Mumford procedure. (AR 220.)

On June 19, 2006, Plaintiff underwent an open distal clavicle excision surgery. (AR 56-57.) Plaintiff received physical therapy after the surgery, and on July 7, 2006, Plaintiff was seen in the orthopedic clinic. He reported pain at 3/10 on the pain scale, and Plaintiff's forward flexion/abduction active range of motion was listed as 0 to120 degrees. (AR 200.) Between July 10, 2006 and September 15, 2006, Plaintiff underwent physical therapy two to three times per week. During this time period, Plaintiff reported his pain between 2/10 and 5/10 on the pain scale. On August 24, 2006, Plaintiff was seen in the orthopedic clinic where he reported that his pain was improving but he "was lifting over the weekend and felt a pop and [his] shoulder [is] now very painful." (AR 174.)

On September 15, 2006, Plaintiff was seen in the orthopedic clinic for a pre-operation evaluation. The surgeon noted Plaintiff's shoulder pain was 0/10 and his active range of motion was 0 to 100 degrees flexion/abduction. (AR 164.) On September 18, 2006, Plaintiff underwent an arthroscopic subacromial decompression/revision and distal clavicle excision surgery on his left shoulder. (AR 686-87; AR 159).

Plaintiff submitted his application for TSGLI benefits on September 6, 2011. The claim was denied by letter dated September 26, 2011. Plaintiff tendered a claim for reconsideration, and it was denied by letter dated February 7, 2012. (AR 47.) With assistance of counsel, Plaintiff submitted a third application (an appeal) for TSGLI benefits on June 26, 2012. (AR 38.) Plaintiff claims that his injuries prevented him from being able to independently perform his activities of daily living (ADLs) of dressing (specifically putting on his shirt, pants, belt, socks, and shoes) and of bathing between February 24, 2006 and September 23, 2006. Defendant states

that during this time-period, he relied on his significant other for physical and stand-by assistance with those activities. At Part B of the application, entitled Medical Professional's Statement, Dr. David McCoy, Plaintiff's family physician, indicated that Plaintiff had ongoing inabilities to bathe independently and dress independently beginning on February 24, 2006, and ending on September 23, 2006, all of which requiring hands-on and stand-by assistance. (AR 41-42.) Dr. McCoy certified that he had not observed Plaintiff's loss, but had reviewed the patient's medical records. (AR 43.) This statement was signed on August 8, 2011. As part of the appeal, Dr. David McCoy wrote a letter indicating that Defendant was placed in a sling from February of 2006 until June of 2006 when he had one of his two shoulder surgeries. Dr. McCoy indicated that he was unable to perform the following activities due to the severity of his injury:

> 1) Unable to bathe independently . . . . He needed hands on assistance, which was given to him by his significant other, performing the following bathing duties: washing his back, holding up his left arm by the elbow and washing under arm and armpit area, washing lower legs. Also, she was always within arm's reach. He meets this requirement because he needed assistance for more than the required one body part.
>
> 2) Unable to dress independently . . . . He needed hands on assistance, which was given to him by his significant other and fellow battle buddies for the following dressing duties: socks, boots, tie the boots, help get left arm through t-shirt, help getting left arm through his BDU top, and help with his belt and buttoning his pants. He meets this requirement because he needed assistance from others to get dressed.

(AR 52; AR 457.)

The appeal application was denied on August 23, 2012, finding: "[y]ou were not hospitalized inpatient for 15 consecutive days or more. Also, the medical documentation you submitted did not indicate that your shoulder injury would make you incapable of performing the ADL's of bathing or dressing that are covered by TSGLI standards." (AR 45.) The letter

directed any further appeals to the Department of Army Board for Correction of Military Records (ABCMR). (AR 45.) Plaintiff submitted an appeal to the ABCMR on December 10, 2012. The Appeal was denied by letter dated November 8, 2013, indicating that Plaintiff "failed to provide adequate medical documentation showing that his injury resulted in a qualifying loss or the inability to carry out two of the six ADLs." (AR 11.) On October 21, 2014, Plaintiff filed this action challenging the Army's denial of his TSGLI benefits.

On April 30, 2015, Defendant filed a motion for voluntary remand to the agency for further action and to stay the proceedings pending remand. On August 18, 2015, the Court granted the motion to remand ordering the agency to consider the complete records from the Army TSGLI office pertaining to Plaintiff's TSGLI claim and request for relief, along with any other documentation plaintiff may wish to submit. [DN 43]. After remand, the ABCMR sought a medical advisory opinion to assess Plaintiff's medical records. (AR 422-424.) Dr. Paul Whittaker, Medical Evaluation Board Physician Supervisor, Madigan Army Medical Center, conducted a review of the medical records and opined that "Mr. Coker's medical record does not appear to support a claim that he was unable to bathe or shower as a result of his injury (other than routine wound precautions for the first week post-operatively, following his surgeries), which would preclude a TSGLI payment, regardless of his ability to dress himself, since inability to perform 2 activities of daily living are required for payment." (AR 424.)

On September 22, 2015, and October 5, 2015, the ABCMR provided Plaintiff's counsel with the advisory opinion in order to allow Plaintiff to respond to or rebut the advisory opinion. (AR 425, 426.) Counsel for Plaintiff responded to the advisory opinion pointing to Dr. David McCoy's certification of the applicant's ADL loss for 120 days, along with the applicant's statement of disability. (AR 419.)

The ABCMR denied Plaintiff's appeal via letter dated March 31, 2016, in relevant part stating:

> DISCUSSION AND CONCLUSIONS:
>
> 10. The evidence of record shows the applicant readily voiced his concerns about his injuries and treatments with medical personnel, his case manager, and physicians who treated him. However, his records for the period claimed fail to show he ever complained of or mentioned being unable to independently bathe or dress himself. Furthermore, there is no medical documentation to show his treating orthopedic specialists, orthopedic surgeon, or physical therapist found him unable to complete these two ADL independently.
>
> 11. Thus, the evidence provided by the applicant and his counsel does not, unfortunately, support a conclusion that the applicant's situation matches the requirements necessary under the TSGLI program to demonstrate an inability to perform at least two ADL for the requisite time period. This determination is based on evidence that includes, but is not limited to:
>     (1) the absence of any statements from individuals who could corroborate with first-hand knowledge that they, or others, were needed to assist applicant to bathe and dress;
>     (2) the absence in his medical records of any contemporaneous complaints about dressing or bathing challenges; and
>     (3) the persuasiveness and specificity of Dr. [Paul Whittaker]'s opinion as contrasted with the generalized nature of Dr. [David] M. [McCoy]'s assessment. Based on this evidence, and the entirety of the record, the applicant has failed to carry his burden to demonstrate, by a preponderance of evidence, that he is entitled to TSGLI benefits.

(AR 417.) On April 29, 2016, this matter was restored to the Court's active docket.

**B. Applicable Law/Standard of Review**

Pursuant to 38 U.S.C. § 1980A(a) and (b), a service member is entitled to TSGLI benefits if he or she sustained a "traumatic injury . . . that results in a qualifying loss." 38 U.S.C. § 1980A(a)(1). The statute defines a "qualifying loss" as "the inability to carry out the activities of daily living resulting from traumatic injury." 38 U.S.C. § 1980A(b)(1). The "inability to

7

carry out the activities of daily living" is further defined as "the inability to independently perform two or more of the following six functions: (i) Bathing, (ii) Continence, (iii) Dressing, (iv) Eating, (v) Toileting, [and] (vi) Transferring." 38 U.S.C. § 1980A(b)(2)(D)(i)-(vi); 38 C.F.R. § 9.20(e)(6)(vi). Benefits will only become available after a service member has experienced at least 15 consecutive days of ADL loss (if due to a traumatic brain injury) or 30 consecutive days of ADL loss (if due to something other than a traumatic brain injury). 38 C.F.R. § 9.20(f)(17), (20). TSGLI will pay $25,000 for each consecutive 30–day period of ADL loss, up to a maximum of $100,000 for 120 consecutive days. 38 C.F.R. § 9.20(f).

"The statute gives district courts jurisdiction to review administrative decisions with regard to TSGLI claims. However, the jurisdictional grant does not set forth the standard of review to be used by the court." Weller v. United States, 2014 WL 5320133, *2 (M.D. La. Oct. 17, 2014)(citing 38 U.S.C. § 1975). In these circumstances, "[c]hallenges to the decisions of military correction boards, such as the [ABCMR], are reviewable under the [Administrative Procedure Act ("APA")], which empowers courts to set aside final agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .'" Espinoza v. United States, 2016 WL 1181742, *2 (W.D. Ky. Mar. 25, 2016)(citing 5 U.S.C. § 706(2)(A)). "The arbitrary and capricious standard of review requires that deference be afforded to the reviewing agency." Id. (citing Maple Drive Farms Ltd. Partnership v. Vilsack, 781 F.3d 837, 852 (6th Cir. 2015)). "When reviewing an agency action, we must assess, among other matters, whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . That task involves examining the reasons for agency decisions—or, as the case may be, the absence of such reasons." Judulang v. Holder, 132 S.Ct. 476, 484 (2011)(internal citations omitted). See also Koffarnus v. United States, 2016 WL

8

1261155, *5 (W.D. Ky. March 30, 2016). An agency decision is arbitrary and capricious when the agency:

> has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

National Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 658 (2007).

### C. Benefit of the Doubt Rule

The Plaintiff argues that the ABCMR should have applied the "benefit of the doubt" rule to his claim for traumatic injury benefits. Under the benefit of the doubt rule, "[w]hen there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant." 38 U.S.C. § 5107. See Koffarnus, 2016 WL 1261155, * 6 n. 6. Plaintiff did not raise this argument before the ABCMR. See AR 22, 419, 473 (citing preponderance of the evidence as the appropriate standard of review for the ABCMR). This same issue was addressed by the district court in Koffarnus who declined to consider this argument. "'The administrative waiver doctrine, commonly referred to as issue exhaustion, provides that it is inappropriate for courts reviewing agency decisions to consider arguments not raised before the administrative agency involved.'" Koffarnus, 2016 WL 1261155, *6 (quoting Coalition for Government Procurement v. Federal Prison Indus., Inc., 365 F.3d 435, 461–62 (6th Cir. 2004)). Based on this law, the Court will not consider the Plaintiff's argument that the ABCMR should have applied the benefit of the doubt rule because Plaintiff did not raise it before the ABCMR.

### D. Whether ABCMR acted arbitrarily and capriciously

The United States concedes that Plaintiff suffered a covered traumatic injury.

(Defendant's Motion at 3.) The dispute pertains to whether Plaintiff suffered a "qualifying loss" under the TSGLI schedule of losses. Plaintiff argues that his claim for TSGLI benefits based on loss of ADLs for over 120 consecutive days is fully supported by the medical certification and letter Dr. David McCoy, the medical records, and the other documentary evidence. The United States argues that the ABCMR's decision to deny Plaintiff's TSGLI claim was reasonable because the Plaintiff failed to establish that he could not independently perform at least two or more of the ADLs for at least 30 days as required under the TSGLI program. After a review of the administrative record, the Court finds that the ABCMR's decision is not arbitrary, capricious, or contrary to law.

First, the record reflects that the Army chose not to simply defer to Dr. McCoy's opinions, but instead chose to review Plaintiff's medical records itself to determine whether such records supported the claimed limitations. Contrary to Plaintiff's argument, it is not "'arbitrary and capricious for the Army to examine and evaluate the underlying records itself, rather than relying on the certifying medical profession's interpretation of the same records.'" Martindale v. United States, 2016 WL 4077121, at *4 (W.D. Ky. July 29, 2016)(quoting Fail v. United States, 2013 WL 5418169, *6 (D. Colo. Sept. 27, 2013)). The district court in Fail noted that "[u]nlike a certification completed by a medical professional who actually supplied treatment to the claimant and who is thus a percipient witness as to the nature and extent of the claimant's limitations, a medical professional who completes the certification based solely on a review of the claimant's medical records is offering nothing more than a *post hoc* opinion." Fail, 2013 WL 5418169, *6. In many circumstances, "that opinion is rendered long after the claimant has recovered from the injury and is based on nothing more than a review of the very same records that are submitted

along with the claimant's application. In short, the very same records that the certifying medical professional relies entirely upon may be available to the Army as well." Id.

Here, despite Plaintiff's representations, Dr. McCoy was not Plaintiff's treating physician and was not a percipient witness as to the nature and extent of the claimant's limitations. In fact, in Part B of the TSGLI application, Dr. McCoy certified that he had not observed Plaintiff's loss, but had only reviewed the patient's medical records. (AR 43.) This statement was signed on August 8, 2011, five years removed from alleged loss of ADLs. Thus, Dr. McCoy's opinion is rendered long after the Plaintiff recovered from his injury and is based on a review of the same medical records that Dr. Whittaker and the ABCMR reviewed. Furthermore, the ABCMR addressed in detail Dr. McCoy's medical opinion in light of Plaintiff's medical records. .

Second, Plaintiff provides no other documentary evidence to support his claim beyond his attorney's arguments and his own statement. This is not a case where the ABCMR disregarded statements of caregivers. "When the medical records do not explicitly address a patient's inability to independently perform the activities of daily living, letters from caregivers provide strong corroborating evidence of a patient's claim." Koffarnus, 2016 WL 1261155, *7 ("At the very least, the Board needed to respond to Koffarnus's spouse's letter, which corroborated her claim and was not frivolous."). See also Conner v. U.S. Dept. of the Army, 6 F. Supp. 3d 717, 723 (W.D. Ky. 2014) (an agency decision may be arbitrary and capricious if the agency does not address a non-frivolous argument made by plaintiff). Instead, the ABCMR specifically noted the absence of such statements to support Plaintiff's claim, as well as the absence of reference in the medical records to any such care. (AR 402, 412, 417.)

Third, the medical records contained in the Administrative Record corroborate Dr. Whittaker's and the ABCMR's assessment that Plaintiff failed to provide support that he was

unable to perform at least two ADLs without assistance for at least 30 consecutive days for the relevant time period of February 24, 2006 to September 23, 2006.  The contemporaneous medical records reflect that Plaintiff suffered an acromioclavicular separation injury to his left shoulder.  While the Plaintiff had pain in his shoulder with movement and periods of time during which the Plaintiff's range of motion was less than 90 degrees, there is no mention in any of the medical records by Plaintiff's treating orthopedic specialists, orthopedic surgeon, or physical therapists of whether the acromioclavicular separation injury had any impact on Plaintiff's ADLs of bathing and dressing.  As early as March 13, 2016, the applicant's physical therapist noted he "was able to lift arm over his head and remove his shirt."  On April 10, 2006, his physical therapist noted a "full range of motion" for Plaintiff's his left shoulder.  Thus, the physical therapy notes indicate that within 20 days of injuring his shoulder, the Plaintiff was able to remove his shirt; within seven weeks of the injury, he enjoyed full range of motion in his shoulder.

     Furthermore, absent from the medical records are complaints from Plaintiff regarding his inability to dress or bathe.  Between March 13, 2006 and September 23, 2006, Plaintiff not only participated in physical therapy, but also painted for his job, conducted overhead activities, moved his belongings from one barrack to another by himself, lifted weights, and ran. With the exception of wound care after his surgeries in June and August, the record does not support a claim that Plaintiff was unable to bathe or shower as a result of the injury.  Dr. Whittaker appropriately pointed out that "devices are readily available, such as a loofa on a stick, with which the applicant could have used, one-armed, to bathe his underarms, neck, back, and legs independently."  (AR 415.)  The evidence further reflects that the Plaintiff was a single, male soldier living in the barracks and was being treated on an outpatient basis.  Given that he was

living in the barracks, Plaintiff offers no explanation of his representation that his significant other was always within arm's length of him during this period of time to offer assistance with bathing and dressing.

Based upon the Court's review of the ABCMR's decision, the medical records, Dr. McCoy's medical certification and letter, and Plaintiff's statement, the Court concludes that the ABCMR's final denial of benefits was supported by substantial evidence. And there is clearly a rational connection between the evidence in the record and the ABCMR's decision. Therefore, the decision was not arbitrary and capricious or an abuse of discretion, and the decision comported with the applicable law. See Weller v. United States, 2014 WL 5320133, *4 (M.D. La. Oct. 17, 2014).

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, United States of America, for summary judgment pursuant to Fed. R. Civ. P. 56 [DN 53] is **GRANTED**. A Judgment will be entered consistent with this Opinion.

cc: counsel of record

Joseph H. McKinley, Jr., Chief Judge
United States District Court

December 14, 2016